IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYCO HEALTHCARE RETAIL SERVICES AG, Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| KIMBERLY-CLARK CORP., et al., Defendants | : | NO. 06-3762 |

MEMORANDUM AND ORDER

McLaughlin, J. July 24, 2007

The plaintiff alleges that the defendants have infringed on its patent for a light incontinent product, patent number 6,506,961 ("'961 patent"). The defendants have filed for summary judgment, arguing that the allegedly infringing product lacks a "gap," a claim element. The Court's construction of "gap" and the related phrase "line segment" follows.

## I. Procedural History

The '961 patent claims a wearable "disposable absorbent pad." Col. 9, ll. 4.[1] The pad comprises three layers, which are bonded together along concentric lines that include at least one elongated "line segment" and at least one "gap." Id. ll. 16-30.

The plaintiff filed this suit in August of 2006,

---

[1] A copy of the '961 patent is attached to the Plaintiff's Complaint as Exhibit A and cited herein as "Col. __, ll. __."

alleging that a product manufactured by the defendants, the Kotex® Maxi Pad, infringed on the '961 patent both literally and under the doctrine of equivalents. The Court permitted the defendants to file an early summary judgment motion, in which they argued that their products, allegedly lacking a "gap," did not infringe on the '961 patent. Because they argued that this conclusion followed directly from a simple inspection of their products, the Court stayed discovery pending a ruling on the motion. The plaintiff opposed the motion and filed an affidavit seeking additional discovery pursuant to Federal Rule of Civil Procedure 56(f).

The Court held oral argument on the motion on March 2, 2007, at which the parties contested the issue of infringement. Because the first step in an infringement analysis is defining disputed claim terms, the argument focused in part on the proper interpretation of the term "gap" and the phrase with which it is juxtaposed in the patent, "line segment." After the argument, the Court held a conference in chambers with counsel to discuss potential case management strategies. The Court thereafter informed the parties that it would consider the defendants' motion only after construing the disputed terms and allowing the plaintiff to take discovery on certain topics highlighted in its Rule 56(f) affidavit.

The Court offered its preliminary thoughts on the

construction of "gap" and "line segment" by letter (docket number 63). The parties have both filed responses to the Court's letter, and the plaintiff has filed a reply to the defendants' response.

II. The Timing of Construction

The plaintiff first argues that it would be prejudiced by construction of the term "gap" without discovery. It anticipates that after the defendants' summary judgment motion is denied, discovery will "reveal additional claim construction issues relating both to additional claim terms" and the terms "gap" and "line segment." Pl.'s Resp. to the Court's May 9, 2007 Letter at 2. Further, it fears that the Court's construction of "gap" and "line segment" in isolation could lead the Court to define the terms incorrectly.

The United States Court of Appeals for the Federal Circuit has rejected similar arguments. In Vivid Technologies v. American Science & Engineering, Inc., 200 F.3d 795 (Fed. Cir. 1999), the appellant faulted the district court for staying discovery and construing the disputed terms, arguing that discovery was needed to understand "which claim elements and what aspects of their interpretation were at issue." Id. at 803.

The Federal Circuit disagreed, observing that "the stage at which the claims are construed may vary with the issues,

their complexity, the potentially dispositive nature of the construction, and other considerations of the particular case." Id. at 803. The Court continued, "[a] district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation. . . When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved." Id. at 803-04.

Construction of "gap" and "line segment" at this time is consistent with the Court's "broad powers of case management." The parties dispute whether the defendants' products contain a "gap," and therefore construction of the term may prove dispositive. The "salutary goals of speed and economy" are furthered by construing the term now. Id. at 804.

Other cases support the Court's decision to construe "gap" and "line segment" without further delay. In Exigent Technology, Inc. v. Atrana Solutions, Inc., 442 F.3d 1301 (Fed. Cir. 2006), the plaintiff argued that construction was inappropriate before the close of expert discovery. The Court, rejecting this argument, expressed doubt that the need for additional discovery on claim construction issues can serve as a valid basis for a Rule 56(f) motion. Id. at 1311.

The case for postponing construction is even weaker here than it was in Exigent Technology because the plaintiff has

failed to pinpoint a single topic on which it needs discovery. See also The Mass. Inst. of Tech. and Elec. for Imaging, Inc. v. Abacus Software, 462 F.3d 1344 (Fed. Cir. 2006)(affirming in part a district court's claim construction where court stayed discovery until the issuance of its Markman ruling); Network Commerce, Inc. v. Microsoft Corp., 422 F.3d 1353, 1363-64 (Fed. Cir. 2005) ("There is no requirement that the district court construe the claims at any particular time").[2]

The plaintiff next argues against the Court's "piecemeal" construction of claim terms, pointing to the rule that a court must interpret terms as they are used in the claims. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005). This rule speaks to the proper method of interpreting claim terms, instructing a court to consider modifying words and phrases when construing a particular term. It does not, however, mandate the construction of all disputed terms at once. (In Vivid Technologies, for example, the parties did not identify all disputed claim terms before the district court's construction.) If the plaintiff believed that other terms in its patent shed light on the meaning of "gap," it was free to make such arguments, and indeed, in response to the Court's proposed

---

[2] The plaintiff's contention that full-scale discovery is needed prior to claim construction is undercut by its case management schedule, which proposed that the parties exchange disputed claim terms more than six months before the close of fact discovery.

construction, it has.[3]

The plaintiff's final argument is that it would be inefficient to construe "gap" now because of the possibility that construction of additional claim terms will be needed at a later stage. The Court believes that it would be more inefficient for the parties to conduct discovery that the Court's construction might render irrelevant. The Court will revise its construction if it becomes necessary, but the plaintiff has not explained how such a revision would cause the Court or the parties undue hardship. Further, the Court believes that such a possibility is unlikely, given the unambiguous usage of the terms in the patent.

---

[3] The other cases cited by the plaintiff do not undermine the Court's authority to engage in construction at this stage in the litigation. In Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322 (Fed. Cir. 2006), there was no evidence in the summary judgment record about the accused products. Without such evidence, the Federal Circuit could not tell whether the district court had limited itself to construing appropriate claim terms. The lower court opinion therefore resembled an advisory opinion because there was nothing to suggest that the matters on which it expounded were necessary to resolve the suit. Id. at 1327. Such concerns are not present here, where both parties have submitted evidence about the accused product and agree on the relevance of the two terms that the Court construes.

The plaintiff also relies on Bayer AG v. Biovail Corp., 279 F.3d 1340 (Fed. Cir. 2002), but that case is inapposite. In Bayer, the district court held that it had implicitly construed a disputed term in a prior opinion. The Federal Circuit disagreed, holding that there was no implicit construction of the disputed term and stating that it would be "premature" for it to engage in claim construction without a lower court construction to review. Id. at 1349. Bayer therefore speaks to the proper timing for appellate review, not the district court's construction.

III. Claim Construction

Claim construction begins with the intrinsic evidence of record: the patent's claims, specification, and prosecution history. Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1164 (Fed. Cir. 2004); Bell Atlantic Network Servs. v. Covad Commc'ns Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001). In construing patent terms, there is a heavy presumption that they carry their ordinary and customary meanings as would be understood by one of ordinary skill in the art. Goldenberg, 373 F.3d at 1164. Where a claim term has no ordinary and customary meaning, a court must resort to the remaining intrinsic evidence to obtain the meaning of that term. Id. If ambiguity persists, a court may look to extrinsic evidence, such as expert or inventor testimony, dictionaries, and technical treatises and articles. Bell and Howell Document Mgmt. Prods. Co. v. Altek Sys., 132 F.3d 701, 706 & n.5 (Fed. Cir. 1997). Where the intrinsic evidence is unambiguous, it is improper for a court to rely on extrinsic evidence. Id. at 706.

The Court therefore begins with the language of the claims of the '961 patent, which contains one product claim and one process claim.

The product claim states that the invention comprises three layers that are bonded together along plural concentric lines, which form a barrier resistant to the egress of fluid out

of the periphery of the pad. Col. 9, ll. 16-28. Each concentric line includes at least one line segment and at least one gap, which serves to enhance the flexibility of the pad at the location of the gap. Id. ll. 28-30, 35-36.

The patent also claims the process of producing the invention described in the product claim. Col. 10, ll. 23-59. Dependent claims 26 and 27 describe two methods of forming the line segments: pressure and thermal bonding. Col. 11, ll. 5-12.

The plain language of the claims reveals that the layers of the pad are bonded together along concentric lines, but not at every point along the line. Instead, there are "gaps" in the bonding that enhance the flexibility of the pad. "Line segment," therefore, refers to a space along a concentric line where the pad's layers are bonded together, and "gap" refers to a space along a concentric line where there is no bonding.

Dependent claims 26 and 27, then, teach that the bonding that forms the line segments can be accomplished by pressure and thermal bonding, for example. This reading is consistent with the specification's discussion of several embodiments of the invention, containing line segments formed by various methods of bonding. See, e.g., col. 5, ll. 24-45; col. 7, ll. 45-50; col. 8, ll. 45-48.[4]

[4] The remaining piece of intrinsic evidence, the patent's prosecution history, has not been submitted nor referenced by either party to support its proposed definitions.

The defendants agree with the Court's proposed construction.[5] The plaintiff objects to the Court's definition, proposing that the Court define "line segment" as "a portion of a plural concentric line at which the top-sheet, fluid absorbent core, and cover sheet are bonded together to form a barrier resistant to the egress of fluid" and "gap" as a "portion of a plural concentric line at which the top-sheet, fluid absorbent core, and cover sheet are not bonded together to form a barrier resistant to the egress of fluid, regardless of how or when such portion is formed."

The Court rejects the plaintiff's definitions for several reasons. First, the phrase "regardless of how or when such portion is formed" is unnecessary. The Court's definition does not, contrary to the plaintiff's fear, mandate how or when the gap must be formed, but instead only requires that a "gap" lack bonding.

Second, the plaintiff's definitions stem in part from a misreading of the patent. In the plaintiff's view, "line

[5] In their summary judgment brief, the defendants argued that "line segment" referred to "compressed portions" and "gap" to "uncompressed portions." When the specification summarizes the invention, however, "pressure" or "compress" are mentioned only once -- in a description of "one aspect of the method" of the invention. Col. 2, ll. 44-48. And no form of the words "compress," "pressure," or "density" is mentioned in either independent claim. The Court therefore believes that the defendants' original construction would improperly confine the meaning of claim terms to their usage in a specific embodiment of the invention. See, e.g., Phillips, 415 F.3d at 1323.

segments" are barriers preventing the egress of fluid, while "gaps" are segments of the pad that are not barriers. The barriers referenced in the claims, however, are the plural concentric lines, which include both line segments and gaps and prevent fluid from exiting the pad. Col. 9, ll. 26-30; col. 10, ll. 45-51. See also col. 2, ll. 40-43 ("The plural concentric lines form a barrier resistant to the egress of fluid out of the periphery of the pad and include at least one gap therein. . ."); Pl.'s Resp. to the Court's May 9, 2007 Letter at 10 (referring to "concentric lines[,] of which the line segments and gaps are part.") In other words, the gaps and the line segments collectively form a "barrier" that prevents fluid from leaking out of the pad. This runs counter to the plaintiff's definition of "gap" as a place where a "barrier" is lacking.[6]

The plaintiff's remaining objection is that the Court should not define "gap" as a place where there is no bonding because the specification teaches that the layers of the pad may be secured to one another by adhesion. See col. 3, ll. 28-30,

---

[6] A line segment may, of course, be a "barrier" in the sense that it "serve[s] as a wall across which fluid cannot flow." Col. 6, l. 28. But the patent's claims refer unambiguously to the barrier formed by the concentric lines -- the combination of gaps and line segments -- that prevents fluid from exiting the pad. The specification is in accord, referring, for example, to the "unbroken portions of the concentric barrier lines," indicating that the concentric barrier lines contain both broken and unbroken portions -- gaps and line segments. Id. ll. 26-27.

46-50. But the fact that layers of the pad are "secured" by adhesion does not suggest that they are "bonded" within the meaning of the claims. The specification itself illustrates this point when it states that the three layers may be bonded together through pressure and adhesion, implying that adhesion alone would not qualify as "bonding." Col. 5, ll. 39-41.

In fact, the patent mentions "bonding" only once: in reference to the formation of bonded line segments. "Gap" is differentiated from, and juxtaposed with, these bonded line segments. A "gap" is therefore a space defined by the absence of bonding. Interpreting the gaps as containing bonding would contradict the claims, which state that the absence of bonding at the gaps increases the flexibility of the pad. If the gaps do, in fact, contain bonding, then this feature of the invention would be eliminated.

Because "line segment" and "gap" are used unambiguously in the patent, the Court declines to refer to extrinsic evidence.[7]

An appropriate order follows.

---

[7] The only piece of extrinsic evidence cited by the parties is the plaintiff's quotation from dictionary definitions of "gap." The Court rejects these definitions to the extent that they are inconsistent with the usage of "gap" in the claims. The Federal Circuit has warned against resorting to non-scientific dictionaries to ascertain the meaning of claim terms, stating that claim construction should focus not on a term's abstract meaning but rather its use in the patent. Bell Atlantic, 262 F.3d at 1267; Phillips, 415 F.3d at 1321.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TYCO HEALTHCARE RETAIL SERVICES AG, Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| KIMBERLY-CLARK CORP., et al., Defendants | : | NO. 06-3762 |

ORDER

AND NOW, this 24th day of July, 2007, upon consideration of the parties' submissions on claim construction, and after oral argument on the defendants' motion for summary judgment heard on March 2, 2007, IT IS HEREBY ORDERED that the terms "gap" and "line segment" in the '961 patent are construed as follows:

1. Line Segment: a space along a concentric line where the pad's layers are bonded together;

2. Gap: a space along a concentric line where there is no bonding.

IT IS FURTHER ORDERED that the parties shall inform the Court by July 30, 2007 whether they would like to amend their summary judgment materials or take discovery in light of the Court's construction. The Court will thereafter set a discovery schedule.

BY THE COURT:

/s/ Mary A. McLaughlin
MARY A. MCLAUGHLIN, J.